No. 80695-1

SUPREME COURT OF THE STATE OF WASHINGTON

ROBERT MILES,

Petitioner,

v.

MBNA AMERICA BANK, N.A.,

Respondent

BRIEF OF *AMICUS CURIAE*
THE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES
IN SUPPORT OF PETITION FOR REVIEW

    Michael D. Kinkley
    Michael D. Kinkley P.S.
    4407 N. Division, STE 914
    Spokane, WA 99207
    (509) 484-5611

    *Counsel for Amicus Curiae*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF INTEREST ................................................................1

INTRODUCTION ...................................................................................1

ARGUMENT ...........................................................................................3

THIS CASE INVOLVES AN ISSUE OF SUBSTANTIAL
PUBLIC INTEREST THAT SHOULD BE DETERMINED BY
THIS COURT. ........................................................................................3

I.      The Rule Adopted By The Court Below Conflicts With
Numerous Decisions Recognizing That A Party Must Be
Permitted To Oppose Confirmation Of An Arbitration
Award On Grounds That No Arbitration Agreement Exists. ..........4

II.     The Rule Adopted By The Court Below Would Jeopardize
The Rights of Consumers In Debt Collection Arbitrations. ............7

CONCLUSION .....................................................................................10

# TABLE OF AUTHORITIES

### CASES

*Arrow Overall Supply Co. v. Peloquin Enterprises*, 323 N.W.2d 1 (Mich. 1982) .................................................................................... 5

*Bank of America v. Dahlquist*, 152 P.3d 718 (Mont. 2007) ........................ 6

*CACV v. Corda*, 2005 WL 3664087 (Conn. Super. Dec. 16, 2005) ........... 8

*Danner v. MBNA America Bank, N.A.*, --- S.W.3d ----, 2007 WL 1219747 (Ark. April 26, 2007) ........................................................ 6

*Fischer v. MBNA America Bank, N.A.*, --- S.W.3d ----, 2007 WL 779295 (Ky. Ct. App. Mar. 16, 2007) ............................................. 6

*In re North of England S.S. Co.*, 57 F.2d 672 (2d Cir. 1932) ..................... 7

*MBNA America Bank, N.A. v. Barben*, 111 P.3d 663 (Kan. Ct. App. 2005) ........................................................................................ 9

*MBNA America Bank, N.A. v. Boata*, 926 A.2d 1035 (Conn. 2007), ..... 4, 5

*MBNA America Bank, N.A. v. Cornock*, No. 03-C-0018 (N.H. Super. Ct. March 20, 2007) ................................................................ 8

*MBNA America Bank, N.A. v. Credit*, 132 P.3d 898 (Kan. 2006) .......... 5, 8

*MBNA America Bank, N.A. v. Engen*, 128 Wn. App. 1050 (Ct. App. 2005) ........................................................................................ 9

*MBNA America Bank, N.A. v. Miles*, 140 Wn. App. 511, 164 P.3d 514 (2007) ................................................................................... 1

*MCI Telecommc'ns Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998) ............................................................................ 6, 7

*Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671 (Ct. App. 2002) .......... 9

*Milwaukee Police Ass'n v. Milwaukee*, 285 N.W.2d 119 (Wis. 1979) .................................................................................................. 6

*Sprague v. Household International*, 473 F. Supp. 2d 966 (W.D. Mo. 2005) ....................................................................................... 9

### STATUTES

RCW 7.04.180 ............................................................................................... 1

RCW 7.04A.230(2) .................................................................................. 1

**OTHER AUTHORITIES**

Associated Press, *Arbitration Stacked Against Consumers*, S.F.
    Chronicle, Sept. 28, 2007 ................................................................. 8

Michael Geist, *Fair.com?: An Examination of the Allegations of
    Systematic Unfairness in the ICANN UDRP*, 27 Brook. J.
    Int'l Law 903 (2002) ....................................................................... 9

National Arbitration Forum, California Consumer Arbitrations, at
    http://www.arb-
    forum.com/main.aspx?itemID=563&hideBar=False&navI
    D=188&news=3 ............................................................................. 8

Pam Smith, *Arbitrators Attack State Disclosure Law*, The
    Recorder, Oct. 18, 2005 ................................................................. 7

Public Citizen, *The Arbitration Trap: How Credit Card Companies
    Ensnare Consumers*, Sept. 2007, *at*
    http://www.citizen.org/documents/Final_wcover.pdf .................... 8

**STATEMENT OF INTEREST**

The National Association of Consumer Advocates (NACA) is an association of more than 1,000 attorneys who represent hundreds of thousands of consumers victimized by abusive business practices. NACA is committed to consumer justice. NACA is concerned about the increasing use of arbitration proceedings before the National Arbitration Forum (NAF) to collect consumer debts, in particular given that NAF arbitrators rule for the creditor in over 99% of default cases.

**INTRODUCTION**

This case poses a simple question, but one of great consequence to Washington consumers: in a judicial proceeding to confirm an arbitration award, must the party opposing confirmation be permitted to raise the argument that no arbitration agreement exists, even if no timely motion to vacate has been filed?[1] The answer is clearly "yes."

Arbitration is a matter of contract. Because an arbitrator derives the power to decide a dispute only from an agreement by the parties, a court cannot confirm an arbitration award—just as it cannot compel

---

[1] RCW 7.04A.230(2) (formerly RCW 7.04.180) requires that a motion to vacate an arbitration award be filed within 90 days of delivery of the award. Mr. Miles argues that he *did* move to vacate within the statutorily-prescribed time limit. Pet. for Rev. at 1. However, the court below found his argument the he had not agreed to arbitration "time barred." *MBNA America Bank, N.A. v. Miles*, 140 Wn. App. 511, 514, 164 P.3d 514 (2007). This was error.

1

arbitration—unless it determines that a valid arbitration agreement exists.

This principle cannot be abandoned merely because the party opposing confirmation fails to move to vacate within the statutory time limit. Rather, as many courts have recognized, the argument that no arbitration agreement exists goes to the arbitrator's authority to issue the award. Thus, a party must be permitted to raise it at any point prior to confirmation of the award, and courts must be permitted to consider it.

Nowhere is this judicial role more critical than in actions to confirm debt collection awards issued by the National Arbitration Forum (NAF). The NAF routinely issues default awards on behalf of creditors without any meaningful requirement that the creditor prove the debtor agreed to arbitration or even owes the debt at issue. In such cases, the only check on this private proceeding is when a court is asked to put its judicial imprimatur on the creditor's award. If the rule adopted by the court below becomes the law of Washington, courts will be powerless to require the creditor to prove that the consumer agreed to arbitration, as long as the consumer has failed to affirmatively move to vacate within the very short time provided by statute. It will not matter whether the consumer was never notified of the arbitration; never served with notice of the confirmation proceeding; or never even opened an MBNA account.

MBNA clearly understands the significance of the Court of

Appeals decision. As it explained when it sought publication:

> [T]his opinion is of general public interest or importance because of the more frequent use of arbitrations involving . . . defaults . . . .
>
> Our office has handled the confirmation of hundreds of credit card Arbitration Awards in the State of Washington. As is evident in this case and in the vast majority of the other cases both at the arbitration stage and at the confirmation stage, the Defendants represent themselves pro se. . . .

Motion to Publish, ¶¶ 3–4 (attached). As MBNA recognizes, many *pro se* consumers will miss statutory deadlines, and a rule requiring Washington courts to rubber-stamp arbitration awards against unsuspecting consumers, no matter how strong the consumer's argument that he never consented to arbitration, will yield more awards confirmed.

The decision below is the first published decision on this issue in this state. It represents a radical reduction in consumer protection, and this Court should not permit it to become the rule in Washington. NACA strongly urges this Court to grant review of the decision below to clarify that in Washington, as in other jurisdictions, a party may oppose confirmation of an arbitration award on grounds that no valid agreement to arbitrate exists, regardless of whether any motion to vacate has been filed.

## ARGUMENT

### THIS CASE INVOLVES AN ISSUE OF SUBSTANTIAL PUBLIC INTEREST THAT SHOULD BE DETERMINED BY THIS COURT.

RAP 13.4 provides that "A petition for review will be accepted . . .

3

[i]f the petition involves an issue of substantial public interest that should be determined by the Supreme Court." This case clearly presents such an issue. First, the decision of the court below sharply conflicts with decisions by several state and federal appellate courts holding that parties must always be able to raise the argument that they never agreed to arbitration as a defense in confirmation proceedings. Second, the volume of "default" debt collection arbitrations conducted by the NAF on behalf of creditors without the participation of the alleged debtor makes clear that courts must not abdicate their responsibility to verify the existence of a purported arbitration agreement before enforcing it.

**I.    The Rule Adopted By The Court Below Conflicts With Numerous Decisions Recognizing That A Party Must Be Permitted To Oppose Confirmation Of An Arbitration Award On Grounds That No Arbitration Agreement Exists.**

A myriad of courts across the country have held that the statute of limitations for filing a motion to vacate does ***not*** bar a party from arguing that no agreement to arbitrate exists in opposition to a petition to confirm the award. The reasoning of these courts is convincing.

For instance, in *MBNA America Bank, N.A. v. Boata*, 926 A.2d 1035 (Conn. 2007), MBNA sought to confirm an arbitration award, and the defendant objected on grounds that the parties had not agreed to arbitrate. The trial court held that it could not consider the defendant's

4

argument, because it had not been raised within the statutory time limit for vacatur. *Id.* at 1039. The Connecticut Supreme Court reversed:

> [B]ecause a trial court cannot confirm an arbitration award unless the parties expressly have agreed to arbitrate the matter, it follows that a defendant must be allowed to object to the confirmation of that award if he properly has preserved a claim as to the existence of an arbitration agreement. . . . Thus, a challenge to the existence of an arbitration agreement is appropriate at any stage before [confirmation] . . . .

*Id.* at 1044–45. The Michigan Supreme Court reached the same conclusion. In *Arrow Overall Supply Co. v. Peloquin Enterprises*, 323 N.W.2d 1 (Mich. 1982), the plaintiff moved to confirm an arbitration award, and the defendant responded that there was no agreement to arbitrate. The trial court confirmed the award, holding that the defendant's argument was untimely. Reversing, the high court held that "the defense of 'no valid agreement to arbitrate' may be raised in an action to confirm or enforce an arbitration award." *Id.* at 2.

Likewise, in *MBNA America Bank, N.A. v. Credit*, 132 P.3d 898 (Kan. 2006), MBNA argued that the court was required to confirm its award simply because the defendant had failed to timely move to vacate. The Kansas Supreme Court disagreed, holding that the trial court was still obligated to determine whether the parties had agreed to arbitrate, in order to avoid confirming an award that was "null and void." *Id.* at 900.

The supreme courts of Arkansas, Montana, and Wisconsin have all

5

reached the same conclusion. *Danner v. MBNA America Bank, N.A.*, --- S.W.3d ----, 2007 WL 1219747 (Ark. April 26, 2007) (court need not confirm NAF arbitration award against alleged debtor simply because debtor failed to timely challenge award); *Bank of America v. Dahlquist*, 152 P.3d 718 (Mont. 2007) (party is not required to challenge an award issued by an arbitrator who lacked jurisdiction to decide the case within the time limitation, because such an award is void *ab initio*); *Milwaukee Police Ass'n v. Milwaukee*, 285 N.W.2d 119 (Wis. 1979) (party may oppose confirmation even if time limit for vacatur has passed); *see also Fischer v. MBNA America Bank, N.A.*, --- S.W.3d ----, 2007 WL 779295 (Ky. Ct. App. Mar. 16, 2007) (court erred by striking consumer's response to petition to confirm as untimely, where consumer argued that no agreement existed).

Numerous federal courts have also flatly rejected the argument MBNA makes in this case. In *MCI Telecommc'ns Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998), the court analyzed the question under the FAA's 90-day time limit, and explained:

> [I]f the agreement to arbitrate does not exist, there is no
> obligation to arbitrate. . . . A party that contends that it is not
> bound by an agreement to arbitrate can therefore simply . . .
> and raise the inexistence of a written contractual agreement to
> arbitrate as a defense to a proceeding seeking confirmation of
> the arbitration award, without the limitations contained in

6

section 12, which are only applicable to those bound by a written agreement to arbitrate.

*Id.* at 430; *see also In re North of England S.S. Co.*, 57 F.2d 672, 673 (2d Cir. 1932) ("Although more than three months have elapsed . . . , the appellant may still assert objections to the confirmation of the award.").

If the rule of the court below stands, Washington consumers will have far less protection against the entry of invalid arbitration awards than consumers in any of these other jurisdictions. The Court should grant review of this case and join these courts in holding that a party must be permitted to raise the argument that no arbitration agreement exists in response to a motion to confirm an arbitration award.

## II. The Rule Adopted By The Court Below Would Jeopardize The Rights of Consumers In Debt Collection Arbitrations.

The private arbitration company designated by MBNA in its credit card contracts, the National Arbitration Forum (NAF), conducts a high volume of debt collection arbitrations on behalf of MBNA and its other creditor clients. A recent analysis of the NAF's consumer arbitrations in California show that debt collection arbitrations against MBNA cardholders account for over 50% of NAF arbitrations in the state.[2] The

---

[2] The NAF does not provide data on arbitrations in any other state, and only recently started complying with California law. *See* Pam Smith, *Arbitrators Attack State Disclosure Law*, The Recorder, Oct. 18, 2005

7

vast majority are "default" proceedings in which the arbitrator rules based only on information provided by one side: the creditor. In these "default" cases, creditors win 99.9% of cases. *See* Public Citizen, *The Arbitration Trap: How Credit Card Companies Ensnare Consumers*, Sept. 2007, *at* http://www.citizen.org/documents/Final_wcover.pdf , at 14.[3]

Problems with NAF default awards have been documented by the courts. In a recent New Hampshire case, MBNA attempted to confirm an award that the NAF had entered against a man whose ex-wife had opened an MBNA account without his consent, and which he had never used or made payment on. The court refused to confirm the award, explaining:

> To hold otherwise would allow any credit card company to force victims of identity theft into arbitration, simply because that person's name is on the account. . . . Under MBNA's reasoning, any identity theft victim would be subject to arbitration simply because the perpetrator used the fraudulently obtained credit card after the arbitration provisions became effective.

*MBNA America Bank, N.A. v. Cornock*, No. 03-C-0018 (N.H. Super. Ct. March 20, 2007). *See also CACV v. Corda*, 2005 WL 3664087 (Conn. Super. Dec. 16, 2005) (NAF's procedures "certainly result[] in a high

---

(noting that NAF sued the District Attorney of San Francisco in attempt to avoid complying with state law requiring it to publish this information).

[3] *See also* Associated Press, *Arbitration Stacked Against Consumers*, S.F. Chronicle, Sept. 28, 2007, at C 1 and C2. The raw data is at National Arbitration Forum, California Consumer Arbitrations, at http://www.arb-forum.com/main.aspx?itemID=563&hideBar=False&navID=188&news=3.

8

likelihood that the outcome of the arbitration will be in the [debt collector]'s favor"); *Credit*, 132 P.3d at 902 (describing "national trend in which consumers are questioning MBNA and whether arbitration agreements exist" and criticizing "MBNA's casual approach to this litigation"); *MBNA America Bank, N.A. v. Barben*, 111 P.3d 663 (Kan. Ct. App. 2005) (noting that NAF award contained "patently . . . untrue" information); *MBNA America Bank, N.A. v. Engen*, 128 Wn. App. 1050 (Ct. App. 2005) (reversing award entered by NAF against consumer who never agreed to arbitrate); *cf. Sprague v. Household International*, 473 F. Supp. 2d 966, 976 n. 8 (W.D. Mo. 2005) (criticizing NAF's position in the case as providing "further support for Plaintiffs' allegation that the NAF is biased in favor of financial institutions"); *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671 (Ct. App. 2002) (finding repeat-player bias by NAF).[4]

Furthermore, NAF arbitrators who rule against creditors such as MBNA have been "blackballed" from deciding other debt collection cases.

---

[4] Independent investigations have confirmed that the NAF steers cases towards arbitrators who predictably rule for corporations over consumers. *E.g.*, Michael Geist, *Fair.com?: An Examination of the Allegations of Systematic Unfairness in the ICANN UDRP*, 27 Brook. J. Int'l Law 903, 912 (2002) (statistical analysis showed NAF funneled cases to arbitrators who most often ruled for its clients); Simone Baribeau, *Consumer Advocates Slam Credit-card Arbitration*, Christian Science Monitor, July 16, 2007, at 13 ("10 most frequently used [NAF] arbitrators . . . decided in favor of the consumer only 1.6 percent of the time, while arbitrators who decided . . . fewer cases decided for the consumer 38 percent of [cases].").

9

As the Christian Science Monitor recently reported:

> Richard Neely, a retired chief justice of the West Virginia Supreme Court, says he received two cases from the NAF in which he wouldn't charge consumers for the creditor's litigation related fees. He never received another case. After she decided against a credit-card company, awarding a consumer damages, Elizabeth Bartholet, a former NAF arbitrator and Harvard law professor . . . was repeatedly removed from cases by the credit-card company. Rather than telling alleged debtors that the creditors removed her, she said, at times NAF mailed letters saying she had a scheduling conflict and had withdrawn.

Baribeau, *supra*, at 13. These examples underscore the need for this Court's intervention. If the rule articulated by the Court of Appeals stands, courts will be required to confirm arbitration awards against any individual who fails to bring a court action to vacate the award—even if the NAF should have never entered an award against her in the first place.

## CONCLUSION

This Court should grant review and reverse the Court of Appeals.


January 31st, 2008                    Respectfully submitted,

                                      _____
                                      Michael D. Kinkley
                                      Michael D. Kinkley P.S.
                                      4407 N. Division, STE 914
                                      Spokane, WA 99207
                                      (509) 484-5611

                                      *Counsel for Amicus Curiae*

10

## CERTIFICATE OF TRANSMITTAL AND MAILING

To: Clerk of the Court
Petitioner Robert E. Miles
Respondent MBNA America Bank, N.A.

I hereby certify that I sent a true and correct copy of the BRIEF OF *AMICUS CURIAE* THE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES IN SUPPORT OF PETITION FOR REVIEW to the Supreme Court of Washington and to the parties, via email and first class mail, postage prepaid, at the addresses below:

**Supreme Court of Washington**
Temple of Justice
P.O. Box 40929
Olympia, WA 98504-0929
supreme@courts.wa.gov

**Robert E. Miles**
1511 Stevens Dr.
Richland, WA 99354
rmiles@bechtel.com
*Petitioner*

**Patrick J. Layman**
Bishop, White, Miersma & Marshall P.S.
720 Olive Way, Suite 1301
Seattle, WA 98101-1801
pjlayman@bwmlegal.com
*Counsel for Respondent MBNA America Bank, N.A.*

Dated this 31st day of January, 2008

Michael D. Kinkley
Michael D. Kinkley P.S.
4407 N. Division, STE 914
Spokane, WA 99207
(509) 484-5611
*Counsel for Amicus Curiae*